I will plead at all. May it please the Court. Good morning, Your Honors. My name is Christian Francis, and I represent the appellants on this case. I would like to reserve four minutes for rebuttal. Yes, you may have it. Thank you very much. Your Honors, we pray to this Court that this sentence to be revoked and the case to be remanded because of the existence of trustworthy issues and clearly material issues of those facts that in light of the most favorable to the plaintiff, a reasonable jury could make a determination in their favor. The District Court took as true the defendant's version that these machines all had illegal devices or were illegal, per se, that made them illegal under the Puerto Rican gaming laws while at the same time completely ignoring the evidence tendered by the plaintiff regarding the fact that the machines were completely illegal and didn't have any of these alleged devices. I'm sorry, I understood from the briefs of the defendant that there are records showing, state police records or agent records showing that each of the machines seized actually fit within the category of an illegal gaming machine because of various devices that have been attached to them. That is not completely true, Your Honor. All right, where in the record are we going to find these things and what is untrue about it? All right, for example, the plaintiff, Mr. Elise Linferno Cruz, he stated the machines were under his control. No, no, please, I'm referring to the law enforcement materials characterizing the machines that were seized, not the owner's descriptions, the law enforcement. All right, the only description, it weren't by a police officer, it was by a Treasury Department agent that seized the machine and break the locks and he determined that all the machines were illegal because apparently had illegal devices, but that allegation never was proved because when the plaintiff went to inspect those machines, the machines were broke, were misplaced and were altered at the time of the inspection took place. At the time of seizure? Yes. Which is what I'm focusing on. There is evidence in the record that each of these machines was illegal. You're saying my clients couldn't confirm that because by the time they saw the machines, they had been altered or destroyed or whatever. Is that correct? Yes, but also two of the clients, two of the plaintiffs were the builders of the machine and they also testified under oath the process to build the machines and how they operate the machines. What we have here is an agent that is not qualified. Several state courts disqualify that agent because unprepared and the lack of knowledge of the adult entertainment machine industry. Stating that the machines were illegal when in fact weren't. We have here... Okay, so let's go back. You have two builders of the machines who put in evidence that in their view the machines were not illegal at the time they were seized. Is that correct? Correct. Because they guaranteed how they operated their machines and how they built those machines, including one of the plaintiffs built his machines and the co-plaintiff's machines. And other of the co-plaintiffs built his machines and the other co-plaintiff's machines. So all the machines that are in question here were built by the same plaintiff. Okay, so now let's go back to your core claim, which is that the seizure was done without a warrant and the state cannot set up a system to seize these machines without a warrant. Correct. Okay, why? Because this is not a pervasively regulated industry, Your Honor. And starting from that fact and that conclusion... I would have thought it was. It is in almost every state that I can imagine. Right. Here, the adult entertainment machines, for example... What is an adult entertainment machine? What does it do? All right, the adult entertainment machine is machines that you place coins just to entertain the client with no pay of prices. Is it like Pac-Man? It is the same. It is the same. Pac-Man is like child entertainment machines. Adult machines, its destiny is forward to the adults but not paying prices. It can pay credits like Pac-Man and every other child's entertainment machines. And they can be easily converted into games of chance. No, that is not. Well, that's what the evidence is. You're drawing a distinction between games of chance, which are gambling machines, and adult education machines. Correct, which is what moved me to the opinion of the order because for every order, the judge states that there are illegal devices and gambling devices, and this is not the case. The case is about adult entertainment machines, which have a valid license issued by the Treasury Department and it enjoins the presumption of correctness that the Treasury Department issued their own license. Here we have several interventions without warrant. When the Treasury agents arrive to the businesses and when they look to the machines and they discover that they are illegal machines, they break the locks and alter or tamper the machines or with the excuse and allegedly found illegal device, they seize those machines. And after that, they notify the forefeasure and then the clients have the opportunity to try to establish the legality of the machine. But in fact, the inadequacy of the procedures is that the procedure has to be in six months and last more than four years and the machines weren't able to be inspected. Okay, I'm just trying to get the basics of your argument down. So you say, first, this is not like heavily regulated industries. They must proceed with warrants. They say it is heavily regulated and furthermore, the warrant requirement would effectively gut our inspection system because these machines can be easily altered even when they're illegal machines to look like they are legal machines. So we have a good government interest in doing it. Suppose we find that this is a sufficiently regulated government regulatory system that they can proceed without warrants. What then is your argument? You still don't concede that that's sufficient? No, but I can assume that it is. Assuming, just for the assumption, Your Honor, the state didn't comply with the burger requirement because there is no substantial guarantees and notification of the framework of the interventions. Okay, even if they don't need warrants? They still have to comply with the burgers even though they don't need the search warrant because that's the adequate notification to the business owners and the substitutes of their rights under the Fourth Amendment. Okay, and what are the burger requirements that they're not complying with? All right. They did not comply, Your Honor, with the time, scope, and place to conduct the searches because the searches that were conducted here were conducted at any time, 24 hours, even day or night. And the scope of the searches were so broad that they can break the locks and they never notify the business owners or the operators of the machines. Their machines are subject to be break. Isn't there a threshold issue, counsel, and that is not necessarily what they did here, but what are the regulations in place? What are the guidelines? Are there any? Do you know? Yes, Your Honor. The extensiveness of the provisions of the regulation in the industry, the record-keeping requirements impose the imposition of criminal penalties as well as civil, the length of the time in the industry or closely regulated industries in the regulation in the state, the inspections are necessary to further the regulatory scheme. Are there treasury regulations or some other form of regulations about the seizure of these machines? No. There's just one act that brought in a broad manner says that the treasury secretary can seize any machines that do not comply. Okay. And then under that authorization is that the treasury agents seize and then forfeit the adult entertainment machines. And you're saying that act is an insufficient regulatory scheme under Berger? Correct. Even assuming that the industry is a pervasively regulated one which we deny, it does not comply with the Berger's requirement analyzing because you don't need the warrantless search to further the state interest because the adult entertainment machines are not easily altered and it's not a movable operation because the machines are notified. I'm sorry. You shifted arguments again. We asked you to assume that the state has an interest in warrantless searches. As Judge Howard has said, even so, there needs to be some regulatory framework. You say the regulatory framework doesn't exist. There are no regs. Correct.  Because under the Berger Analyze you have to have a substitute adequate of the Fourth Amendment right because there is a protected interest of property of the business owners and the plaintiffs and you are intervening with that property interest. Yes, but what specifically is missing from the regulatory scheme that you say has to be there to make it constitutional? The detail and the scope, time, place of the search, and the scope within the manner of the intervention, how it will be conducted, how the search will intervene with the business operation, time, and all those guidelines that are set forth in Berger since colony, this will, here are not present. Okay. Thank you very much. Can I just ask, since this has been our theme today, there are no, according to you, no written regs other than one broad regulation. Has the Puerto Rico Supreme Court, in interpreting that regulation, said anything about the scope? No, Your Honor. There is just one expression saying that it's a dictum actually, it was subject that we treat in the opposition to the letter of the sister council, that it was a dictum saying that it was a pervasively highly regulated industry based upon the opinion order that was made by the judge of the district court in this case. But nothing else to the extent of the Supreme Court? Nothing else more than that. Okay. Good morning. May it please the court, Susana Pena-Garicano on behalf of defendants at police. I would like to start by saying that it is uncontested, this defendant's argument, and it is uncontested that the adult entertainment machine is a highly regulated business. It has been recognized by the Puerto Rico courts, including Sound Design, which is in docket 7526, in WSAs, which was submitted in a 28-day letter. And also, it is uncontested that plaintiffs or the owners of the property have the burden of proof to defeat the presumption of the validity of the confiscation and the seizure. In here, plaintiffs have provided no evidence whatsoever that they have defeated such a validity. I think you may have sidestepped an issue of some concern to the court. There is, even if it's a highly regulated business, usually there are some form of administrative regulations to meet the Berger standard. Your brother says there is no such standard, and what is your response to that? My response to that would be, first, to direct the court's attention to docket 7528. It's a Puerto Rico Court of Appeals case, Desfederación de Operadores de Máquinas de Entretenimiento, where the Court of Appeals addressed the scheme in adult entertainment machines and determined that the statutory scheme was an adequate substitute to a warrant, and I direct the court's attention to page 24 to 26 of that docket. I would also like to go through the laws providing guidelines and definitions. I'm sorry, what did the Court of Appeals hold? The Court of Appeals held, and I have it right here in front of me, that the statutes dealing with the regulatory scheme of adult entertainment machines constitutes an adequate substitute to the judicial order, since it advises that the business is subject to inspection and who should perform the same. It continues, that's in page 24 in docket 7528, and it goes on to page 26 of that docket. I also would like to go over... I'm sorry, the docket entries are helpful, but if you would tell us in plain language. The Court of Appeals says the Berger requirements have been met because the businesses are subject to inspection, and that's it? No. In that case, the Court of Appeals incorporated the three requirements in Berger, and it discussed the three requirements in Berger in that same docket at page 21 and 22. And it discussed the issues as discussed by the Puerto Rico Supreme Court in Pueblo versus Ferreira. In other words, the Puerto Rico Court of Appeals incorporated the requirements as the court discussed it, the Puerto Rico Supreme Court discussed it in Pueblo versus Ferreira, and it went through the requirements, the three requirements of Berger, discussing them, and determined that this regulatory scheme was complied with. It meets and it is an adequate substitute of a warrant or judicial order. Can we focus on the third requirement of Berger? I will do that, Your Honor. Certainty and regularity. Whereas in Berger you had daytime inspections, records were, they were on notice that records were subject to inspection. There was evidence that although the particular subject of the search in that case may not have been searched at regular intervals, they did several a day. Do we have any of that kind of evidence in this case? What we have is that inspections have to be done during business hours. It has to be done during business hours. So where is that written down? First, in docket 7528 again, in page 25, you can find that at the top of the page. Also, we have the docket 751 and 759. What I really mean is how is it that the entity that is subject to inspection to know that the inspections will take during business hours, to know that they won't be done arbitrarily? That's what I mean by where is it written down? This is training they received from attorneys that were hired by the Department of the Treasury. And these attorneys provided Descovich and Flores, which are defendants in here, because actually they provided training regarding the procedure for inspections. And these attorneys, pursuant to the opinion of the Secretary of Justice and the circular letter of the Department of the Treasury, both in the record in docket 7524 and docket 7522, these attorneys provided the training regarding the inspections and inspection procedure. Plaintiffs acknowledged that in their brief, too. That's why they're suing these two attorneys who were hired to provide legal advice on these issues. You know, it's all very odd. One would expect that this would be put in a code of regulations and you just lay out everything there. Instead, you seem to have a piecemeal approach that depends, in part, on whatever two private lawyers hired by the state end up saying. Is there any single place a business owner can look to find all of this information? All of the regulations? Well, there are posts, a circular letter, and it's posted in the site at the Department of the Treasury. I'm sorry. About the business owners, I'm not sure about the timing, about the time scope. No, I'm not sure. I don't have that answer. Yes, you said it's posted at the Department of the Treasury. The circular letter. What does it say the requirements are? Well, the circular letter basically... Is it in the record? It is. 7522. It picks up what the statutory scheme provides. It provides that there are limitations regarding these inspections because, for example, Section 82 of the Games of Chance Act states and defines clearly what is deemed to be an illegal machine. These persons conduct field inspections. They observe the machines, and they can only inspect licenses, internal revenue licenses, and the object for which they are issued. They have to look or examine these machines in order to be able to see if any of the guidelines and definitions provided by the statutes, among that Section 82 of the Games of Chance Act and Internal Revenue Code are present when they observe these machines. So each owner of a business who has one of these machines gets this circular letter. It is posted at the Treasury in the site of the Treasury Department. What do you mean posted? There's one poster that's up on a wall at the Treasury. It's online. The circular letter may be found online. And there's also administrative orders, which are discussed in the opinion of the Secretary in Docket 7524. Do the business owners know that they can go online to... I can't answer that question. I would assume I go online to request information regarding taxes and stuff like that. Yes, but we've had bad experiences with Puerto Rico in prior cases involving automobile insurance and the state essentially not providing the information to the owners of auto policies that they were owed a refund. Well, Your Honor, the thing is that these procedures or guidelines and definitions that are supposed to be observing when they do the inspections are in the law. In Section 82 of the Games of Chance Act, in Section 82A of the same Act. Also, the Internal Revenue Code of 1994, as amended by Law 22 of 1997, provides all these guidelines and description of what is deemed to be an illegal machine, the mechanisms and apparatus, and I must add that the Puerto Rico Supreme Court stated and plaintiffs admitted to this, that these machines are easily manipulated and they can be easily changed and altered to add devices that make them illegal. The Puerto Rico Supreme Court also in the same case on the sign stated that if these machines are carefully examined, the mechanisms hiding the devices that make them illegal gambling machines can be detected. Therefore, it is our contention that the jurisprudence, Sun Design, SSAS, and the Federación de Operadores de Máquina, which is in Docket 7528, provide sufficient guidelines and limitations to the discretion of the inspecting official. Would you acknowledge that the district court in this case did not even discuss the third prong of Berger, the one that we've spent the entire argument on, and I just wonder if it would be helpful to, instead of us trying to figure out whether they're sufficient to have some findings on that before we decide. I agree that the court did not develop an argument on that. I believe the court basically relied on what the Puerto Rico cases have already decided. Like in Sun Design and the cases that are in the record. So I believe that there is no need. We have jurisprudence, we have administrative orders, we have opinions of the secretary, we have laws like the Games of Chance Act, we have the Internal Revenue Code, we have the Uniform Administrative Procedure Act, which provide for all this. And also I must stress that plaintiffs have a remedy in state court to rebut and to defeat the legality or the validity of these seizures, and plaintiffs have not provided evidence that they have done so. They are placing the burden upon the defendants to prove that the machines were illegal. When they are the ones, as determined by the Puerto Rico Supreme Court in Sun Design and WSA's, who have the burden to prove that it is illegal. They did put on evidence that by the owner, the builder of the machines saying that it was illegal. And they also put on evidence that when they eventually got hold of the machines after you guys had completed your inspection, that they were damaged or impaired to the point that they were no longer able to determine the validity of the assertions that you made against them. Your Honor, the Internal Revenue Code provides that the Secretary of the Treasury can inspect documents, records, sites, premises, inventory and everything. Regarding to businesses and professions and activities that are subject to taxes and fees. Within that authority, these people inspected, they observed and did a field test of the machines. And once there was a detected illegality of these machines, we have in record, and I direct the Court's attention to our brief to page 35 and 36, where we cite in the record all the in ramp confiscation orders, the inspection sheets and the notification violations and fines. And in there, there is an inventory that is provided as to what was found in there after the illegality has been detected. And what is in there, the person in charge of the establishment is supposed to be present pursuant to section 6140, subsection A of the Internal Revenue Code, is supposed to facilitate the examination of these machines. This is pursuant to the law. This is public information. And these people, before leaving and before seizing these machines, there is an inventory sheet. There is an inspection sheet. There is a notification of fines and violations and everything is provided in the record. Do the machines necessarily have to be destroyed in order to do the inspection? Are you talking about while, during the inspection? Well, the machines are not destroyed. What happens is that once there is a detected illegality, then the inspecting agents request the keys in order to open the machines because there has to be an inventory done. There is money inside the machines. Seizure cannot happen until that money is accounted for. Because if not, there will be allegations that money is missing, that money was stolen, that there was money inside. So there has to be open. So the machine cannot be seized until there is an inventory of the inside of the machine in order to contabilize that money. Under Puerto Rican law, is the machine itself then forfeit? Is the machine itself subject automatically forfeit? It is forfeited. The person has an opportunity to once notice is given within 30 days of the seizure, the plaintiff has the opportunity to challenge the validity. And their argument is they can't prove anything anymore because their proof gets destroyed in the course of the inspection. Well, I think what they, I could be mistaken, what they are trying to say is that after the inspections, these machines are placed in warehouses. And there are allegations, what I understood was, that sometimes there were pieces or parts missing. But during the inspection that is done, it is done with the person in charge of the establishment. That person is in front of the agents. The agents are never alone when they do these inspections. These inspection sheets are provided to the person in the business or the person in charge of the business before leaving with the machines. Plaintiffs, if they do succeed and prevail in the confiscation or forfeiture proceeding, plaintiffs do have a remedy. They have either a return of the property or its appraisal value. And that's in the law. That's in the Uniform Forfeiture Act. There is a remedy. And there's no destruction or parts missing during the inspection. There is an inspection sheet. There has to be an inventory before seizing the machine. Otherwise, there wouldn't be allegations. There's money missing inside. Why are there destruction or parts missing after the seizure then? That's out of the control of the agents. It's in a warehouse at the Department of Justice. We don't know. Things happen. I have no explanation as to that. But it's not the fault of the inspecting officers. There's no allegation as to that. So it is our contention that if that would be the case, assuming that that's what happened, they proved the illegality of the confiscation, they still have the appraisal value of the property. But there's a difference between being able to demonstrate that the machine was operating properly so that it could return to its use versus getting the fair market value of a machine at the time of the seizure, which is minuscule, isn't it? Well, they have also, you know, why would it be minuscule? I'm not sure if I understand the question. Difference? The value of the machine is probably a lot less than the value of the machine in operation. Well, that's something that is subject to determination by the court with evidence. They can provide evidence of the expenses on the receipts. In the state court system. Yes, that's correct, Your Honor. That's correct. That's subject to the court's determination based on evidence. Thank you. I submit the rest of the case on the briefs. Thank you. So, Counsel, can you go on an Internet site at the Department of Treasury and find the rules laid out? It's not true, Your Honor. What Sister Counsel were referring to, the circular letter, is a letter issuing the requirements for the issuance of licenses, not to the guidelines of the interventions. From the record of this case, it is clear that the supervisor at least didn't prepare any regulations or guidelines to the lower rank officers of the Department of Treasury and the operators of this machine on when, how, and where those inspections could be performed. I refer to the page 357 of the appendix, specifically, excerpt of the deposition of Co-Defendant Abimael Rodriguez, lines 2-7, page 325, excerpt of the deposition of Maria Medina, lines 18-24, page 236, and excerpt of the deposition of Co-Defendant Aileen De Leon, lines 15-21, page 256. From the testimony of the appellee agents, it is clear that they choose which business to inspect at random, without any specific instructions given to them by their supervisors on how to examine the equipment or how to proceed at all times. What the treasury agent determined to be illegal is a supposedly device that electronically attached and altered the machine, but then, in a magical way, those devices disappeared. In the first inspection, he broke the machines, and without the presence of the machine owners, he concluded that the machine is illegal because it allegedly has a device. And then, mysteriously, those devices disappeared. You know, sometimes in the best of regulatory systems, mistakes get made. And as a matter of federal law, if there is an adequate state regulatory system with safeguards built in, it doesn't matter if there are one or two or individual mistakes in the implementation of it. So your stronger argument, I think, is that there is the absence of regulatory guidance. There are no regulations as to the time, scope, and duration of those inspections. The Supreme Court, again, stressed that this could only occur in those instances where the applicable regulation is clear to scope in application in time and manner, so it could be a reasonable substitute for the search warrant, and this is not the case. In this case, the defendants never produced any evidence that they had regulations or guidelines that would put adult entertainment machines operators and their own agents in notice of how those inspections were going to take place. It was totally at their own discretion. Okay, counsel. There is a motion before us as to a complete translation of a Puerto Rico Supreme Court opinion. I'm not going to hear an argument. If you are relying on it, which you appear to be, it is your burden to provide it to the court at your cost. We are not going to engage in cost shifting. You were the first party to rely on this opinion. If you want us to look at it, you will bear the burden of the cost. No argument. That is the court's ruling. All right? Your Honor, regarding that case, I just want to say that the issue in that case was whether or not, if may I, Your Honor. No, you may not. If you think it's important, you will provide it to us. If you think it's unimportant, you will give us a letter saying that you are not providing it for this reason. All right? Thank you, Your Honor. Thank you very much.